UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JASON S. BROWN,

                    Petitioner,

    v.

WARDEN BAKER, *et al.*,

                    Respondents.

Case No. 3:17-cv-00687-MMD-WGC

ORDER

**I.    SUMMARY**

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Petitioner Jason S. Brown, a Nevada prisoner who is represented by counsel. Currently before the Court is Respondents' Motion to Dismiss ("Respondents' Motion") (ECF No. 20). Brown has opposed (ECF Nos. 31, 36-1), and Respondents have replied (ECF Nos. 35, 47).[1] Also before the Court is Brown's Motion for Evidentiary Hearing ("Petitioner's Motion") (ECF No. 37). Respondents have opposed (ECF No. 48). No reply brief was filed and the deadline for doing so has expired. For the reasons discussed below, Respondents' Motion is granted and Petitioner's Motion is denied.

**II.    RELEVANT BACKGROUND**

    **A.    Procedural History**[2]

Brown challenges a conviction and sentence imposed by the Second Judicial

///

---

[1]Months after Respondents' Motion was fully briefed, Petitioner's counsel sought leave of the Court to file a corrected response along with sealed exhibits. (ECF Nos. 36, 39, 40.) Petitioner also filed the motion for evidentiary hearing. (ECF No. 37.) The Court granted Petitioner leave to file the corrected response and sealed exhibits, and granted Respondents leave to file a surreply. (ECF Nos. 41, 46.)

[2]This procedural history is derived from the exhibits located at ECF Nos. 21, 22, 32, and on the Court's docket. All page citations in this order refer to the page numbers provided by the CM/ECF system, unless otherwise stated.

District Court for Washoe County, Nevada. In June 2015, Brown entered a plea of *nolo contendere* to seven felony charges of "torturing and/or killing an animal," in violation of NRS § 574.100. (ECF No. 21-13.) On October 1, 2015, the State Court entered a judgment of conviction sentencing Brown to consecutive sentences of 19 to 48 months per count. (ECF No. 21-17.) An amended judgment was entered December 30, 2015. (ECF No. 21-23.) He did not appeal.

Brown filed a state petition for writ of habeas corpus on October 4, 2016. (ECF No. 21-25.) He also requested that counsel be appointed. (ECF No. 21-24.) The state court appointed counsel. (ECF No. 21-25.) After multiple extensions of time, counsel filed a supplemental petition in May 2017. (ECF No. 22-5.)

Respondents filed a motion to dismiss, arguing that Brown's state petition was untimely. (ECF No. 22-6.) In November 2017, the state court granted Respondents' motion and denied the state petition as time-barred. (ECF No. 22-15.) Brown appealed. The Nevada Court of Appeals affirmed the state court's ruling, and a remittitur issued on September 20, 2018. (ECF Nos. 22-28, 22-29.)

### B. Federal Habeas Action

On November 17, 2017, Brown filed his original federal habeas petition along with a motion for appointment of counsel. (ECF No. 1.) This Court appointed counsel. (ECF Nos. 5, 11.) In November 2018, Brown filed a counseled First Amended Petition ("Petition") (ECF No. 19) alleging three grounds.

Respondents now move to dismiss the petition as untimely, partially unexhausted and/or procedurally defaulted.

## III. TIMELINESS

### A. Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year period of limitations for federal habeas petitions filed by state prisoners under 28 U.S.C. § 2254. In relevant part, AEDPA provides:

(1) A 1–year period of limitation shall apply to an application for a writ of

2

habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action . . . .

28 U.S.C. § 2244(d).

Brown argues that his federal petition should be considered timely because he is entitled to both equitable tolling and statutory tolling under §§ 2244(d)(1)(B). The Ninth Circuit has outlined the correct order of analysis for claims of statutory and equitable tolling. Federal courts must first determine whether a petition is untimely under the AEDPA one-year limitation period. *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002). Second, the court considers whether "a petition is timely due to statutory tolling under § 2244(d)(2)," which provides tolling when a properly filed application for post-conviction or other collateral review is pending in the state courts. *Id.* Third, the court determines whether equitable tolling is appropriate. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). If necessary, the court then addresses statutory tolling under § 2244(d)(1)(B) (*i.e.*, delayed accrual), which postpones the start of the one-year limitation period until an unconstitutional, state-created impediment to filing is removed.[3] *Id.* Accordingly, the Court will address Brown's tolling arguments in this sequence.

### B. Timeliness Under § 2244(d)(1)(A)

The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which a petitioner's state court conviction became final. 28 U.S.C. § 2244(d)(1)(A). When the state court issues an amended

///

---

[3]Issues of equitable tolling are examined before delayed accrual under § 2244(d)(1)(B) because federal courts must first consider all non-constitutional grounds. *Lott*, 304 F.3d at 925 (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985)) (quotation and citations omitted); *United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999) (en banc) (restating the "well-established" maxim that "courts are not 'to decide questions of a constitutional nature unless absolutely necessary to a decision of the case'") (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905)).

1 judgment of conviction, AEDPA's one-year limitation period restarts from the date of
2 amendment. *Smith v. Williams*, 871 F.3d 684, 687 (9th Cir. 2017). When no direct appeal
3 is filed, a judgment becomes final when the time period for seeking such review expires.
4 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012). For prisoners
5 convicted in Nevada, a notice of appeal must be filed "with the district court clerk within
6 30 days after the entry of the judgment or order being appealed." Nev. R. App. P. 4(b)(1).

Here, Brown did not file a direct appeal. His amended judgment of conviction was entered December 30, 2015. (ECF No. 21-23.) Thus, the time for Brown to seek such review expired January 30, 2016. The AEDPA limitation period began running after this date. Absent any tolling or delayed accrual, the limitation period expired one year later on January 30, 2017. This expiration date is not disputed.

### C. Equitable Tolling

The Supreme Court has held that AEDPA's limitation period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, equitable tolling is appropriate only if a petitioner can show: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A petitioner "must show that some 'external force' caused his untimeliness, rather than mere oversight, miscalculation or negligence." *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quotation omitted). Thus, he must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g.*, *Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (untimeliness must be "caused by an external impediment and not by [petitioner's] own lack of diligence"). The petitioner bears the burden of demonstrating that he is entitled to equitable tolling. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quotation omitted).

The Ninth Circuit has "adopted the 'stop clock' approach to analyzing claims for equitable tolling. "[T]he statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015) (citing *Gibbs v. Legrand*, 767 F.3d 879, 891–92 (9th Cir. 2014)).

Brown argues four grounds to justify equitable tolling: (1) trial counsel abandoned Brown after sentencing, (2) Brown suffered from threats of violence and spent time in administrative segregation during his first year in prison, (3) post-conviction counsel erroneously conceded the untimeliness of Brown's state petition, and (4) the state court and post-conviction counsel misled Brown to reasonably believe he had properly filed the state petition.

### 1. Abandonment by Trial Counsel

"Equitable tolling may be warranted in instances of unprofessional attorney behavior; however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Doe v. Busby*, 661 F.3d 1001, 1011–12 (9th Cir. 2011) (citing *Spitsyn v. Moore*, 345 F.3d 796, 800–02 (9th Cir. 2003)); *see also Holland*, 560 U.S. at 651 (attorney's professional misconduct could "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling"); *Porter v. Ollison*, 620 F.3d 952, 960 (9th Cir. 2010) (interpreting *Holland* to treat "violations of canons of professional responsibility" as evidence that attorney's conduct was "extraordinary"). The attorney's misconduct must be "a *sufficiently egregious* misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling. *Doe*, 661 F.3d at 1012 (citation omitted). Where counsel's inaction had no effect on the timeliness of the petitioner's federal habeas filing, equitable tolling will not be warranted. *United States v. Buckles*, 647 F.3d 883, 890–91 (9th Cir. 2011) (citing *Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010)).

Brown asserts that his trial counsel, John Oakes, abandoned him and refused

contact with him after the October 2015 sentencing hearing. Brown contends that he expressed discontent with his sentence to Oakes at sentencing. (ECF No. 38-3 at 2, ¶ 4.) In the days following, Brown avers that he attempted to contact Oakes by phone multiple times as he intended to ask Oakes to pursue an appeal. (*Id.* ¶ 5.) When Oakes did not take or return his call, Brown claims he asked his father, Randen L. Brown ("Randy"), to contact Oakes and direct Oakes to call Brown.[4] (*Id.* ¶ 6; ECF No. 38-2 at 2, ¶ 3.) Brown states that Randy attempted to contact Oakes several times and left multiple voice messages asking Oakes to contact Brown, but Oakes never contacted Brown or returned Randy's calls. (ECF Nos. 38-3 at 2, ¶ 6; 38-2 at 2, ¶¶ 4–5.) Brown argues that, but for Oakes's abandonment, he would have appealed and Oakes therefore deprived Brown of his right to a direct appeal.

Brown further argues that Oakes had a duty to consult with Brown about whether he wanted to pursue an appeal. Even without a consultation, Brown insists that Oakes should have filed a notice of appeal on Brown's behalf based on the circumstances known, *i.e.*, Brown received the maximum sentence, consecutive on each count, above probation's recommended sentence, and the state court allowed improper victim-impact testimony from non-victims during the sentencing hearing.

Respondents counter that Oakes' alleged ineffective assistance does not establish a basis for tolling because "it was Brown's own decision as to when to mail his state habeas petition which lead to it being ultimately dismissed as untimely and now results in his federal petition also being untimely." (ECF No. 35 at 4 (citing *Randle*, 604 F.3d at 1057–58 (rejecting equitable tolling claim where petitioner's counsel failed to file a timely

///

---

[4]Brown's original response asserted that he specifically asked his father to contact counsel and tell counsel to "contact Brown about an appeal." (ECF No. 31 at 26:18.) Both Brown and Randy submitted declarations in support of the corrected response. (ECF Nos. 38-2, 38-3.) The corrected response represents as follows: "The evidence now on record is *not clear whether Randy knew the reason Brown asked Randy to call Oakes*, only that Brown wanted to speak with him." (ECF No. 36-1 at 7, n.10 (emphasis added).) Brown argues the reason for the call "is implied—it would be clear to anyone, under the circumstances, that he wanted to contact Oakes about the next steps he needs to take in this litigation, given his dissatisfaction with the outcome of his sentencing hearing." (*Id.*)

notice of appeal)).) They further contend that the declarations of Brown and Randy actually weaken the argument for attorney abandonment because the declarations only state that Brown wanted Oakes to call him—they do not say what the call would have been about—and Brown does not affirmatively represent that "he ever directed his trial counsel, either verbally or in writing, to file a direct appeal or habeas petition on his behalf." (ECF No. 47 at 4–5.)

Brown's argument regarding attorney abandonment relies on unsupported allegations and speculation.[5] He provides no competent evidence, only a self-serving affidavit, to show that he intended to contact Oakes *about filing an appeal*. Given the existence of alternative procedural mechanisms, the Court is not persuaded that the circumstances of Brown's sentencing necessarily imply that he wanted to file a direct appeal. Although Brown is not required to carry his burden of persuasion at the pleading stage, equitable tolling issues are highly fact-dependent; thus, he must allege sufficient facts that would, if true, entitle him to equitable tolling. *See Orthel v. Yates*, 795 F.3d 935, 940 (9th Cir. 2015). Brown's conclusory assertions and speculation do not support equitable tolling.

In addition, Brown fails to show diligence. Brown's plea memorandum states: "My attorney has advised me that if I wish to appeal, any appeal, if applicable to my case, must be filed within thirty days of my sentence and/or judgment." (ECF No. 21-13.) Brown's state petition further indicates his awareness of the 30-day time limitation and its filing affirmatively demonstrates his ability to seek post-conviction relief. (ECF No. 21-25 at 6 (alleging that Brown "couldn't reach [Oakes] within the 30 days").) Brown does not allege a date, or range of dates, when he or Randy purportedly attempted to contact Oakes. The record and recent declarations—at most—suggest that Brown attempted to contact Oakes during the time period to file a notice of appeal, which ended January 29, 2016, at the latest. Even if the Court were to accept Brown's assertions of attorney

---

[5]In multiple footnotes and a separate motion, Brown claims that an evidentiary hearing or discovery would support his allegations of attorney abandonment. The record and evidence before this Court are sufficient to decide this issue.

7

abandonment, nothing in the record or declarations supports a showing of diligence in the months before he filed the state petition.

Brown also fails to show that Oakes' inaction caused him to forfeit his appeal. He argues he "need only show that 'but for counsel's deficient conduct, he would have appealed'." (ECF No. 36 at 25 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000)).[6] However, in *Flores-Ortega*, the Supreme Court expressly rejected a "*per se* prejudice rule*,*" which provided habeas relief solely upon a showing that counsel had performed deficiently as such rule "ignores the critical requirement that counsel's deficient performance *must actually cause* the forfeiture of the defendant's appeal." 528 U.S. at 484 (emphasis added). Case law specifically addressing equitable tolling also requires a nexus between the "extraordinary circumstances" and the petitioner's untimeliness. *E.g.*, *Grant v. Swarthout*, 862 F.3d 914, 926 (9th Cir. 2017) (finding that prison officials' delay in providing petitioner with requested *in forma pauperis* certificate was the "cause" of the federal petition being denied as untimely).

Even if the Court equitably tolled the period of alleged attorney abandonment, Brown's original federal petition would still be untimely. He requests equitable tolling from the date of sentencing, October 1, 2015, through the date he filed the state petition, October 4, 2016. The AEDPA filing deadline would then be October 4, 2017. However, this action commenced on November 17, 2017, or 44 days past the tolled filing deadline. As such, Oakes' alleged inaction does not support a causal link Brown's untimeliness. *See Randle*, 604 F.3d at 1058 (counsel's failure to file a timely notice of appeal from a state conviction "had little to no bearing on [petitioner's] ability to file a timely federal habeas petition," but "simply meant that [he] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action—it did not prevent

---

[6]The Court notes that *Flores-Ortega* addressed the substantive merits of a habeas petitioner's claim for ineffective assistance of counsel by applying the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), to counsel's failure to file a direct appeal. The case does not address equitable tolling of a petitioner's filing deadline based on counsel's alleged abandonment. *E.g., Holland*, 560 U.S. at 651–54; *Spitsyn*, 345 F.3d at 799.

8

1 | him from filing the petition")). Brown has not carried his burden to support equitable tolling based on attorney abandonment.

### 2. Threats of Violence and Administrative Segregation in Prison

In general, conditions unique to prison confinement do not qualify as extraordinary circumstances warranting equitable tolling. *E.g.*, *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) ("Ordinary prison limitations," such as administrative segregation and limited access to law library, are "neither 'extraordinary' nor make it 'impossible' for a prisoner to file his petition in a timely manner"); *see also Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) ("Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.") (citation omitted).

Brown alleges that his conditions of confinement constitute another extraordinary circumstance for equitable tolling. During his first year in prison, he claims he suffered threats of violence from other inmates and struggled to form meaningful relationships.[7] He contends that the difficult facts underlying his conviction, resulting in approximately six months in protective custody segregation, had a negative impact on his relationships in prison. Brown further asserts that he had no direct access to the law library while in segregation and the prison failed to provide someone with legal training to help him. He avers that a person brought around a box of forms to his segregated unit but he did not know what legal documents to request and the person with the forms was unable to answer his questions. Based on these allegations, Brown argues he has established grounds for both equitable tolling and statutory tolling.

Respondents contend that Brown's circumstances do not show a basis for equitable tolling or statutory tolling. Although Brown initially requested protective custody, Respondents point out that he asked to be reclassified to general population shortly
///

---

[7]Notably, the original response alleged that Brown "was suffering violence at the hands of other inmates." (ECF No. 31 at 29:5–6.) The corrected response states that Brown was "suffering *threats* of violence." (ECF No. 36-1 at 29:5–6 (emphasis added).)

thereafter. They further assert that Brown's general complaints about the shortcomings of the prison's legal assistance do not establish an actual, specific injury.

A brief summary of Brown's inmate records is instructive. The record shows that he arrived at the Northern Nevada Correctional Center ("NNCC") within a week of his October 2015 sentencing. (ECF No. 38-4 at 2.) During the intake process, prison officials placed him in administrative segregation "due to safety and security concerns" as he was "threatened by numerous inmates, due to his offense." (ECF No. 40-1 at 3.) Based on the nature of his crime, Brown initially requested protective segregation. (ECF No. 40-2 at 2.) In November 2015, Brown was transferred to Lovelock Correctional Center ("LCC") (ECF No. 38-4 at 2), where he told prison officials he had "no issues or concerns with safety, housing, work or yard." (ECF No. 40-2 at 2.) Within days he asked, "to go to general population." (ECF No. 40-1 at 4.) In January 2016, his request was approved (*id.*), and he signed a waiver of protective segregation (ECF No. 40-2 at 3). Brown moved to LCC's general population in April 2016. (ECF No. 38-4 at 2). He again told prison officials he had "no issues/concerns" and was "housed appropriately." (ECF No. 40-2 at 3.) In July 2016, Brown asked prison officials for a "credit transcript," which was sent through interoffice mail. (*Id.* at 4.) Brown attended periodic reviews in January 2017, July 2017, and March 2018. (*Id.*) He was asked each time "if he had any questions, concerns, or issues to discuss," to which he "replied, 'No'." (*Id.*) With the exception of a three-week period during March–April 2017 when Brown was placed in administrative segregation for contraband, his inmate record shows no additional threats from inmates, disciplinary infractions, or reclassification out of general population. (*See generally* ECF No. 40-2.)

Brown has not shown that his situation amounted extraordinary circumstances or inhibited his ability to timely file a habeas petition. Inmate records show that Brown initially suffered threats from other inmates at NNCC; however, no more threats were reported after his transfer to LCC in November 2015. Brown complains that he had no access to the law library or legal assistance while in administrative segregation and protective custody, yet he was transferred to general population in late April 2016—months before

the deadlines to file either a state or federal petition. Although he briefly returned to administrative segregation in late March 2017, this episode occurred well after the expiration of the January 30, 2017 AEDPA deadline. Additionally, Brown's inmate records show that he requested and received a credit transcript from prison officials. There is no record of him asking for legal materials or assistance or being denied the same. Rather, prison officials asked Brown at regular intervals whether he had questions, concerns, or issues to discuss, and he consistently said he did not. In short, nothing in the record suggests that prison officials or Brown's conditions of confinement actually prevented him from filing his § 2254 petition. *See Ramirez*, 571 F.3d at 1000–01 (citing *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996)). Brown has not alleged any actions to show diligence or any impediment to filing after he entered general population and had access to the prison law library. Accordingly, Brown is not entitled to equitable or statutory tolling on this basis.

### 3. Post-conviction Counsel's Arguments Regarding the Timeliness of the State Habeas Petition

Brown argues that equitable tolling is warranted because post-conviction counsel, Troy Jordan, erroneously conceded that his state habeas petition was untimely.

The state court file-stamped Brown's *pro se* state petition on October 4, 2016. (ECF No. 21-25.) Brown filed a counseled supplemental petition in May 2017. (ECF No. 22-5.) Respondents moved to dismiss in July 2017, arguing that the state petition was untimely based on the date of the original judgment of conviction, October 1, 2015, and the amended judgment of conviction did not restart the clock. (ECF No. 22-6.) Jordan opposed the motion, pointing out that Brown mailed the state petition on September 30, 2016, and the petition would be timely if this date was used pursuant to the prison mailbox rule, instead of the file-stamp date. (ECF No. 22-12 at 3–4.) Jordan conceded that Nevada does not apply the prison mailbox rule to state petitions but made a good faith request for a change in the law. (*Id.*) Jordan further noted:

> Mr. Brown was under the mistaken belief that the one year deadline started from the amended judgement and believed he was mailing the petition in a timely enough fashion to meet the deadline. An inmate uneducated in the law cannot be expected to understand that an Amended Judgement allows

11

him to pursue certain issues but not others within a 1 year deadline...."

(*Id.* at 5.) Jordan did not argue that Brown's limitation period should be calculated from the date of the amended judgment of conviction, December 30, 2015.

The state court granted Respondents' motion, finding that the Nevada Supreme Court has specifically rejected Brown's arguments regarding the prison mailbox rule. (ECF No. 22-15 at 5–6 (citing *Gonzales v. State*, 53 P.3d 901, 903 (Nev. 2002) (en banc); *Orpiada v. McDaniel*, 750 F.3d 1086 (9th Cir. 2014)).) The court stated that Brown's "Amended Judgment made no substantive changes to the judgment of conviction or the sentence imposed; it merely added a paragraph to reflect the aggregate of the sentences imposed on each of the seven counts." (*Id.* at 3.) Accordingly, the state court found that the state petition "was filed late, and there [was] no good cause shown sufficient for overcoming the mandatory procedural requirements for petitions for writ of habeas corpus." (*Id.* at 6.)

The Nevada Court of Appeals affirmed the ruling in August 2018: "Brown filed his petition more than one year after entry of the judgment of conviction on October 1, 2015, and none of his claims implicated the changes reflected in his amended judgment of conviction." (ECF No. 22-28.) As such, Brown's state petition was untimely and procedurally barred. (*Id.* (citing NRS § 34.726(1); *Sullivan v. State*, 96 P.3d 761, 764 (Nev. 2004).) The order of affirmance relies on *Sullivan*, where the Nevada Supreme Court held that the one-year time limit for filing a state petition does not automatically restart upon filing of an amended judgment merely correcting a clerical error. 96 P.3d at 764.

Brown contends that his one-year deadline should have been calculated from the December 2015 amended judgment—not the original October 2015 judgment. (ECF No. 36-1 at 14–17 (discussing *Sullivan*, 96 P.3d at 764; *Whitehead v. State*, 285 P.3d 1053, 1055 (Nev. 2012).) Brown analogizes to *Whitehead*, in which the Nevada Supreme Court distinguished *Sullivan* and held that a judgment of conviction failing to specify the restitution amount and terms required by NRS § 176.105(1) is not a final judgment. 285 P.3d at 1055. Whitehead's original judgment of conviction included the specific amounts

of fines and assessments imposed but stated that restitution would be determined later by stipulation or evidentiary hearing. *Id.* at 1054. The *Whitehead* court found that "[s]etting the amount of restitution after an evidentiary hearing" was not the same as correcting a clerical error because restitution "is an integral part of the sentence." *Id.* at 1055. Thus, a deficient judgment, failing to "set an amount of restitution," is not final. *Id.*

Like the original judgment in *Whitehead*, which lacked terms required by statute, Brown claims that his original judgment of conviction was not final because a Nevada statute required the judgment to aggregate his sentencing terms into a single sentence. Brown asserts that Jordan's failure to argue this equates to a concession of untimeliness and is "only reason he did not obtain the benefit of statutory tolling." (*Id.* at 30.)

Respondents counter that Brown is not entitled to equitable tolling where the cause of his late filing was Jordan's alleged ineffective assistance. (ECF No. 35 at 4.) They also point out that the Ninth Circuit has "confirmed Nevada's right to reject the prison mailbox rule." (*Id.* at 2–3 (quoting *Orpiada*, 750 F.3d at 1089–90).)

The Court finds that Jordan's purported error does not provide a basis for equitable tolling. Even taking Brown's allegations as true, Jordan's concession regarding the state petition's untimeliness would amount to ordinary attorney negligence and does not warrant equitable tolling. *See Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (concluding that "the miscalculation of the limitations period" by petitioner's counsel did not constitute an extraordinary circumstance for equitable tolling). In addition, Brown has failed to meet his burden of proof to show causation. Although Jordan did not argue that Brown's situation was analogous to *Whitehead* and the original judgment was not final, Jordan noted that the amended judgement allowed Brown "to pursue certain issues but not others within a 1 year deadline." (ECF No. 22-12 at 5.) Jordan was aware of the amended judgment and chose to pursue different arguments. *See Malcom v. Payne*, 281 F.3d 951, 962 (9th Cir. 2002) (declining equitable tolling where counsel chose to pursue clemency instead of filing a timely federal habeas petition). The state court addressed Brown's amended judgment, found that it made no substantive changes, and therefore

held that his state petition was late. The Nevada Court of Appeals affirmed.[8] Under these circumstances, the Court is not convinced that Jordan's failure to argue a specific theory caused Brown's untimely filing. Accordingly, Jordan's alleged error was not an external force that caused Brown's untimeliness.

### 4. Misleading Statements Regarding the State Petition

Equitable tolling may be appropriate where a court misleads a habeas petitioner. *Pliler v. Ford*, 542 U.S. 225, 234 (2004); *Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013). However, a petitioner's "misunderstanding of accurate information cannot merit relief." *Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) (internal quotation omitted); *see also Brambles v. Duncan*, 412 F.3d 1066, 1070–71 (9th Cir. 2005) (denying equitable tolling where court's statement presented "accurate options available" to petitioner).

Brown argues that the state court's orders appointing counsel and granting extensions of time encouraged him to believe his state petition was timely. (ECF No. 36-1 at 34–39.) Brown also contends that Jordan affirmatively advised Brown as if he had a viable post-conviction proceeding in state court. He points to Jordan's February 2017 letter detailing Brown's chances to win. (*Id.* at 36–37 (citing ECF No. 32-2).) However, after Respondents moved to dismiss on timeliness grounds, Jordan wrote to Brown in October 2017 acknowledging "it was highly likely [his] petition will be dismissed." (*Id.* at 38 (quoting ECF No. 32-3).) In November 2017, Brown filed his federal petition, which he styled as a "protective writ." (ECF No. 1.) Until receiving Jordan's October 2017 letter, Brown argues, he was operating under a reasonable belief that he had no reason to file a federal petition. For these reasons, he claims the state court and Jordan affirmatively caused him to reasonably believe his state petition was viable and lulled him into inaction. Respondents do not address these arguments.

The state court and Jordan did not affirmatively mislead Brown. This Court has reviewed the state court's orders (ECF Nos. 21-26, 21-27, 21-29, 22, 22-4, 22-9, 22-11).

///

---

[8]The Court notes that it has no authority to review Nevada courts' application of Nevada law. *See Jackson v. Ylst*, 921 F.2d 882 (9th Cir. 1990).

14

They do not provide inaccurate or misleading information. Additionally, the state court never deemed Brown's state petition properly filed or excused any lateness. *See Rudin v. Myles*, 781 F.3d 1043, 1058 (9th Cir. 2015) (finding that equitable tolling was appropriate where the state court expressly found that "extraordinary circumstances" extended the one-year deadline, and prosecutors failed to brief timeliness issue).[9] Thus, the Court is not persuaded that the appointment of Jordan or extensions of time encouraged Brown to believe his state petition was timely.

In addition, Brown cannot show that he relied on Jordan's advice to forgo filing a federal petition. The first of Counsel's letters to Brown is dated February 16, 2017. (ECF No. 32-2). The second letter was sent in October 2017. (ECF No. 32-3.) Jordan's correspondence was dispatched weeks to months *after* Brown's AEDPA deadline expired in January 2017. Accordingly, Jordan's correspondence was not an external force that caused his untimeliness. Brown is not entitled to equitable tolling for the state court and his Jordan's purported misstatements.

Based on these findings, the Court declines to equitably toll the AEDPA statute of limitations.

### D. Statutory Tolling / Delayed Accrual Under § 2244(d)(1)(B)

Brown contends that § 2244(d)(1)(B) constitutes grounds for statutory tolling. This provision allows for tolling (*i.e.*, a delayed start) of the one-year limitation period when the state creates an impediment to filing a federal habeas petition "in violation of the Constitution or laws of the United States" until such impediment is removed, if the impediment actually prevented the petitioner from filing. 28 U.S.C. § 2244(d)(1)(B). "Although similar in style," a § 2244(d)(1)(B) tolling claim "must satisfy a far higher bar than that for equitable tolling." *Ramirez*, 571 F.3d at 1000. "There is no constitutional right to file a timely § 2254 petition;" accordingly, a petitioner is not entitled to tolling under § 2244(d)(1)(B) unless a state-created impediment "altogether prevented him from

---

[9] Notably, the state court issued only one order granting an extension of time before the January 30, 2017 expiration of Brown's AEDPA deadline. (ECF No. 21-29.) The other orders were entered after the deadline expired. (ECF Nos. 22, 22-4, 22-9, 22-11.)

15

presenting his claims in *any* form, to *any* court." *Id.* at 1001 (rejecting delayed accrual because petitioner filed three state petitions, a state discovery motion, and a federal motion during the relevant time) (citing *Lewis v. Casey*, 518 U.S. 343, 350–51 (1996)).

In the alternative to equitable tolling, Brown argues that delayed accrual is warranted under § 2244(d)(1)(B) because the State of Nevada's failure to recognize the prison mailbox rule impeded his access to the courts, thereby violating the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (ECF No. 36-1 at 42–45.) This failure to recognize the prison mailbox rule, Brown asserts, creates a disparate impact between indigent prisoners and prisoners with the means to hire counsel because it changes the amount of time a prisoner has to prepare a habeas petition. Brown contends that counseled prisoners can be certain about when to submit a petition for filing because counsel utilizes electronic same-day filing, but *pro se* prisoners are forced to use the prison mail system and speculate about the amount of time necessary for mailing to ensure a timely filing. Brown also claims that Jordan's concession of untimeliness amounted to ineffective assistance and prejudiced him. (ECF No. 36-1 at 45–46.) Because counsel's ineffective assistance is imputed to the State, Brown argues that Respondents are responsible for the constitutional violation.

Respondents point out that the Ninth Circuit has confirmed Nevada's right to reject the prison mailbox rule. (ECF No. 35 at 2–3 (citing *Orpiada*, 750 F.3d at 1089–90).). They further argue that Jordan's alleged ineffective assistance is not a basis for tolling because Brown made his own decision regarding when to mail his state petition. His decision, Respondents assert, lead to the untimeliness of both the state and federals petitions.

Brown's contentions for tolling under § 2244(d)(1)(B) lack merit. "To obtain relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition." *Bryant*, 499 F.3d at 1060 (citation omitted). Although Brown claims that Jordan's ineffective assistance and Nevada's rejection of the prison mailbox rule constituted impediments to timely filing, the record shows he was able to use the prison mail system to submit both a state and federal

1  petition *pro se*. This indicates that Respondents did not prevent him from presenting his
2  claims "in *any* form, to *any* court." *See Ramirez*, 571 F.3d at 1001. Brown provides no
3  explanation for why he was able to file petitions in October 2016 and November 2017 *pro*
4  *se* but was held back from doing so at earlier times. Thus, delayed accrual is unavailable
5  under § 2244(d)(1)(B).

### E. AEDPA's Statute of Limitation is Constitutional

Lastly, Brown asserts that § 2244(d)(1)'s one-year limitation period violates the Suspension Clause of Article I, § 9 and the Due Process Clauses of the Fifth and Fourteenth Amendments. (ECF No. 36-1 at 47–52.) However, Brown's argument is foreclosed by binding precedent. The Ninth Circuit has repeatedly held that § 2244(d)(1) does not violate the Suspension Clause. *E.g.*, *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).[10] AEDPA's "one-year limitations period leaves petitioners with a reasonable opportunity to have their federal claims heard." *Id.* AEDPA's statute of limitation does not violate the Constitution.

Having determined that Brown lacks grounds to toll AEDPA's statute of limitations, the Court will grant Respondents' Motion and dismiss the petition as untimely.

## IV. CERTIFICATE OF APPEALABILITY

"State prisoners 'seeking post-conviction relief under 28 U.S.C. § 2254 ha[ve] no automatic right to appeal a district court's denial or dismissal of the petition.'" *Payton v. Davis*, 906 F.3d 812, 817 (9th Cir. 2018) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). "Rather, habeas petitioners 'must first seek and obtain a COA,'" *i.e.*, certificate of appealability. *Payton*, 906 F.3d at 817 (quoting *Miller-El*, 537 U.S. at 327); *see also* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22-1(a). District courts are
///

---

[10] *See also Crater v. Galaza*, 491 F.3d 1119, 1124 (9th Cir. 2007) (rejecting petitioner's argument that § 2254(d)(1) "constrains relief so dramatically that it *effectively* suspends the writ"); *Dogan v. Roe*, 8 F. App'x 612, 613–14 (9th Cir. 2001) (rejecting arguments that § 2244's statute of limitations violates the Due Process, Equal Protection, and Suspension Clauses); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2000) (holding that the "one-year limitation does not violate the Suspension Clause because it is not jurisdictional and may be subject to equitable tolling").

required to issue or deny a certificate of appealability when it enters a final order adverse to a habeas petitioner, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Fed. § 2254 R. 11(a); 9th Cir. R. 22-1(a).

Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Where a district court denies relief on procedural grounds without reaching the underlying constitutional claim, courts apply a two-step inquiry to decide whether a certificate of appealability is appropriate. *Payton*, 906 F.3d at 820. A petitioner must show both that jurists of reason would find it debatable (1) "whether the petition states a valid claim of the denial of a constitutional right," and (2) "whether the district court was correct in its procedural ruling." *Gonzalez*, 565 U.S. at 140–41 (quoting *Slack*, 529 U.S. at 484); *Payton*, 906 F.3d at 820 ("Both components must be met before [the Ninth Circuit] may entertain the appeal.") (citing *Slack*, 529 U.S. at 484–85). To meet this threshold inquiry, a petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006).

The Court has considered whether the issues Brown raised satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. No reasonable jurist would find this Court's dismissal of the petition debatable or wrong. The Court will therefore deny Brown a certificate of appealability.

## V. CONCLUSION

In accordance with the foregoing, it is therefore ordered that Respondents' Motion to Dismiss (ECF No. 20) is granted. Brown's First Amended Petition (ECF No. 19) is dismissed with prejudice as time-barred.

It is further ordered that Brown's Motion for Evidentiary Hearing (ECF No. 37) is denied.

It is further ordered that a certificate of appealability is denied, as reasonable jurists

would not find the district court's dismissal of the federal petition as untimely to be debatable or wrong, for the reasons discussed herein.

The Clerk of Court is instructed to enter final judgment accordingly, in favor of Respondents and against Brown, dismissing this action with prejudice and close this case.

DATED THIS 12th day of September 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE